IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: | : | |
| | : | |
| STAN JOSEPH CATERBONE, | : | CIVIL ACTION NO. 21-1169 |
| | : | BANKRUPTCY NO. 21-10265 |
| Appellant. | : | |

## MEMORANDUM OPINION

Smith, J.                                                                                                                      June 14, 2021

The *pro se* appellant has appealed from the bankruptcy court's order dismissing his Chapter 11 bankruptcy petition for his failure to pay the required fee. As discussed below, the court will dismiss this appeal because the appellant failed to timely file his appeal and, as such, the court lacks jurisdiction to hear this appeal.

### I.     PROCEDURAL HISTORY

On January 28, 2021, the *pro se* appellant, Stan Joseph Caterbone ("Caterbone"), filed a Chapter 11 voluntary bankruptcy petition for an individual with the United States Bankruptcy Court for the Eastern District of Pennsylvania. *See* Docket, *In re Caterbone*, Bankr. No. 21-10265-pmm (Bankr. E.D. Pa.). On February 3, 2021, the Honorable Patricia M. Mayer entered an order informing Caterbone that the bankruptcy court may dismiss the case if he did not file or submit various documents that he should have submitted with his bankruptcy petition pursuant to Rule 1007 of the Federal Rules of Bankruptcy Procedure. *See* Feb. 3, 2021 Order, *In re Caterbone*, Bankr. No. 21-10265-pmm (Bankr. E.D. Pa.), Doc. No. 16. Judge Mayer's order set out a schedule for Caterbone to submit the missing documents, with Caterbone having to submit most of them by no later than February 11, 2021. *Id.*

On February 4, 2021, Judge Mayer entered an order requiring Caterbone to show cause why the court should not dismiss his bankruptcy petition because he failed to pay the mandatory

filing fee of $1,738 along with his petition. *See* Feb. 4, 2021 Order, *In re Caterbone*, Bankr. No. 21-10265-pmm (Bankr. E.D. Pa.), Doc. No. 18. Judge Mayer also scheduled a telephonic hearing on the order to show cause for February 16, 2021, and admonished Caterbone that if he failed to appear for the hearing, the court could dismiss the case. *Id.* On February 16, 2021, Judge Mayer held the show cause hearing and, after the conclusion of the hearing, entered an order dismissing the action because Caterbone failed to pay the filing fee.[1] *See* Docket, *In re Caterbone*, Bankr. No. 21-10265-pmm (Bankr. E.D. Pa.), Doc. Nos. 24, 25.

The bankruptcy court docket reflects that Judge Mayer's dismissal order, which appears to have been entered on the docket on February 17, 2021, even though it is dated for February 16, 2021, was mailed to Caterbone on February 19, 2021. *See* Docket, *In re Caterbone*, Bankr. No. 21-10265-pmm (Bankr. E.D. Pa.), Doc. No. 26. On March 4, 2021, Caterbone filed a notice of appeal from the dismissal order. *See In re Caterbone*, Bankr. No. 21-10265-pmm (Bankr. E.D. Pa.), Doc. No. 27. He also filed an application for leave to proceed *in forma pauperis* on appeal. *See In re Caterbone*, Bankr. No. 21-10265-pmm (Bankr. E.D. Pa.), Doc. No. 28.

With the notice of appeal, Caterbone included a document titled "ISSUES ON APPEAL," which contained, *inter alia*, (1) general language relating to judicial misconduct; (2) a copy of Judge Mayer's February 16, 2021 Order, with him writing over a portion of a footnote in the order where Judge Mayer questioned why he pursued Chapter 11 relief, with: "I told the corrupt Judge Mayer (Irish?) to read exhibit 'Reorganization Plan'!"; (3) explanations as to why he pursued Chapter 11 relief (which included references to allegations about harassment, computer hacking, etc.); (4) claims that Judge Mayer committed judicial misconduct; (5) a brief in support of his complaint of judicial misconduct, for which he discussed his personal history going back to 1987

---

[1] There is no transcript of this hearing, and it is unclear from the docket and Judge Mayer's order whether Caterbone appeared for the hearing.

2

(and indicated that he is owed $217 million for antitrust violations); (6) a discussion of his financial situation where it appears he indicates that he has $0 in "cash reserves"; (7) information about a polygraph test of him on August 8, 2015; (8) his family history; (9) a list of the 44 non-trespass notices he has received over the years; (10) references to mind control; and (11) references to an attack on the United States and Canadian Embassies in Cuba via microwave weapons. *See In re Caterbone*, Bankr. No. 21-10265-pmm (Bankr. E.D. Pa.), Doc. No. 27.

On March 26, 2021, Judge Mayer granted Caterbone's application for leave to proceed *in forma pauperis* on appeal to the district court. *See* Mar. 26, 2021 Order, *In re Caterbone*, Bankr. No. 21-10265-pmm (Bankr. E.D. Pa.), Doc. No. 35. The bankruptcy court then transmitted the record to this court, and the clerk of court docketed the record here on April 1, 2021.

On June 4, 2021, this court entered an order upon Caterbone to show cause why the court should not dismiss this bankruptcy appeal because he failed to (1) timely file his notice of appeal, and (2) comply with Rule 8009 of the Federal Rules of Bankruptcy Procedure insofar as he did not (a) file with the bankruptcy court a designation of the contents for inclusion in the record on appeal or (b) request a copy of the transcript of the February 16, 2021 hearing before Judge Mayer or file a certificate with the bankruptcy court clerk indicating that he was not ordering a transcript. *See* Order to Show Cause at 1, Doc. No. 4. The court directed Caterbone to file a written response to the order by June 18, 2021. *See id.* Caterbone timely filed his response on June 4, 2021.[2] Doc. No. 5.

---

[2] The order to show cause indicated that the court would resolve the order on June 21, 2021, without oral argument, unless otherwise ordered by the court. *See* Order to Show Cause at 2. Although the order indicated that the court would resolve the matter on June 21, 2021, as Caterbone has submitted his response to the order, the court is resolving the order to show cause now.

3

## II.     DISCUSSION

As the court explained in the order to show cause, Judge Mayer's February 17, 2021 order is a final order from which Caterbone could file a notice of appeal. *See, e.g.*, *In re First Conn. Consulting Grp., Inc.*, 340 B.R. 210, 213 (D. Ver. 2006) ("A bankruptcy court's dismissal of a Chapter 11 case is a final order."). An appeal from a final order "shall be taken . . . in the time provided by Rule 8002 of the Bankruptcy Rules." 28 U.S.C. § 158(c)(2); *see also* Fed. R. Bankr. P. 8003(a)(1) ("An appeal from a judgment, order, or decree of a bankruptcy court to a district court . . . under 28 U.S.C. § 158(a)(1) or (a)(2) may be taken only by filing a notice of appeal with the bankruptcy clerk within the time allowed by Rule 8002."). Rule 8002(a) states that "[e]xcept as provided in subdivisions (b) and (c), a notice of appeal must be filed with the clerk **within 14 days after entry of the judgment, order, or decree being appealed**." Fed. R. Bankr. P. 8002(a)(1) (emphasis added). As relevant to this action, "[a] judgment, order, or decree is entered for purposes of . . . Rule 8002(a) . . . when it is entered in the docket under Rule 5003(a)[.]" Fed. R. Bankr. P. 8002(a)(5).

An appellant's failure to timely file a notice of appeal from the complained-of decision of the bankruptcy court in accordance with Rule 8002 implicates this court's subject-matter jurisdiction over the appeal. *See In re Caterbone*, 640 F.3d 108, 111–13 (3d Cir. 2011) (determining that "28 U.S.C. § 158(c)(2)'s incorporation of the filing timeline in Rule 8002(a)" signifies that "the time requirement for filing a bankruptcy appeal is jurisdictional" and concluding that district court lacked jurisdiction to hear appellant's appeal from bankruptcy court's order dismissing his Chapter 11 bankruptcy petition because he failed to timely file notice of appeal); *see also In re Sobczak-Slomczewski*, 826 F.3d 429, 432 (7th Cir. 2016) (per curiam) (agreeing that "the 14-day time limit to file notice of appeal of the bankruptcy court's judgment or order is

jurisdictional"); *In re Berman-Smith*, 737 F.3d 997, 1002 (5th Cir. 2013) (per curiam) ("Since the statute defining jurisdiction over bankruptcy appeals, 28 U.S.C. § 158, expressly requires that the notice of appeal be filed under the time limit provided in Rule 8002, we conclude that the time limit is jurisdictional."); *In re Latture*, 605 F.3d 830, 837 (10th Cir. 2010) (concluding that section 158(c)(2) "determin[es] jurisdiction by incorporating the time limits prescribed in Rule 8002(a)"). *But see In re Tennial*, 978 F.3d 1022 (6th Cir. 2020) (concluding that "Bankruptcy Rule 8002(a)(1)'s 14-day time limit for filing a notice of appeal does not create a jurisdictional imperative").

Here, the bankruptcy court's dismissal order was entered on the docket on February 17, 2021, and Caterbone had 14 days thereafter to file a notice of appeal. The 14th day after the entry of the dismissal order was Wednesday, March 3, 2021. Caterbone did not file his notice of appeal until Thursday, March 4, 2021, which was one day after the 14-day period ended.[3] It therefore appears that this court lacks jurisdiction to hear this action.

Concerning Caterbone's response to the order to show cause, as far as the court can discern, his response, which is 16 pages in length, does not at any point address the timeliness of the appeal. *See generally* Show Cause Br., Doc. No. 5. The first five pages of his submission consist of a title page and a copy of the court's order to show cause. *See id.* at ECF pp. 1–5. The sixth page includes what appears to be an excerpt from the opinion in *In re DePinto*, 336 B.R. 693, 695–96 (E.D. Pa.

---

[3] The court recognizes that Caterbone dated the notice of appeal for March 2, 2021, but that date is irrelevant as the notice of appeal was not actually entered on the bankruptcy docket until March 4, 2021. It is unclear whether Caterbone personally delivered or sent the notice of appeal by mail to the clerk of court for filing, but even if he sent it by mail, he is not a prisoner entitled to the benefit of the federal "prisoner mailbox rule," *see Houston v. Lack*, 487 U.S. 266, 275–76 (1988) (concluding that a *pro se* prisoner's petition is deemed filed "at the time petitioner delivered it to the prison authorities for forwarding to the court clerk"), and there is no prisoner-mailbox-rule equivalent for non-prisoner, *pro se* litigants. If a non-prisoner litigant chooses to send a document by mail to the clerk of court for docketing, the litigant risks that the clerk's office will not receive and docket the document until a date that could exceed the time to act in a particular case.

5

2006), where the court discusses the Bankruptcy Abuse Prevention and Consumer Protection Act's addition of a credit counseling requirement before a person may file for bankruptcy. *See* Show Cause Br. at ECF p. 6. In addition, Caterbone includes a reference to the purpose of him having filed for Chapter 11 bankruptcy, which was "to formalize the intent of the litigation of the debtor, Stan J. Caterbone, and to ermark [sic] a certain portion of the future settlments [sic] for the creditors named herein." *Id.* (emphasis and most capitalization omitted).

The seventh page of Caterbone's submission consists of information so the court can "make an intelligent and legal OPINION for this motion." *Id.* at ECF p. 7. Here, Caterbone asserts:

> **This Plan of Reorganization (the "Plan") under chapter 11 of the Bankruptcy Code [(] The "Code") proposes to pay creditors of STAN J. CATERBONE, PRO SE DEBTOR (the "Debtor") from PROCEEDS FROM THE MYRIAD CLAIMS OF VIOLATIONS OF CIVIL RIGHTS, VIOLATIONS OF ANTI-TRUST, VIOLATIONS OF THE RICO STATUTE, FEDERAL FALSE CLAIMS ACT RE ISC, INSURANCE CLAIMS OF VANDALISM AND THEFTS, DAMAGES FOR PAIN AND SUFFERING, ETC., ALL OF WHICH HAVE BEEN ACCRUING SINCE 1987. THESE CLAIMS ARE CURRENTLY IN LITIGATION IN FEDERAL AND STATE COURTS. THESE CLAIMS HAVE [sic] ARE ALL WELL SUBSTANTIATED AND ARE SUPPORTED WITH IRREFUTABLE EVIDENCE IN THE FORM OF DOCUMENTS, AUDIO RECORDINGS, AND VIDEOS. HOWEVER DUE TO THE HISTORY OF STAN J. CATERBONE, THISE [sic] CLAIMS HAVE BEEN POLITICIZED SINCE 1987 AND THE FBI COINTELPRO'S PRGOGRAM [sic] HAS BEEN USED TO OBSTRUCT EFFORTS IN ALL OF THE COURTS. IT IS HIGHLY PREJUDICIAL AND CRIMINAL TO ALLOW THIS CONDUCT TO PROCEED AND NOT ALLOW THIS REORGANIZATION PLAN TO BE CONSUMATED FOR THE SAKE OF THE CREDITOR'S [sic], WHO HAVE BEEN UNJUSTLY PUNISHED JUST AS THE DEBTOR, STAN J. CATERBONE. MANY OF THSES [sic] CASES HAVE RESULTED IN ORDERS GRANTING PERMISSION TO WITHDRAW WITHOUT PREJUDICE UNTIL THE UNDOINFLUENCE [sic], COMPUTER HACKING, HARASSMENT, VADALISM [sic], ETC., IS REMOVED FROM THE DEBTORS [sic] LIFE SO THAT THESE CLAIMS CAN BE FULLY LITIGATED WITHOUT INTERRUPTION OR SETTLEMENTS REACHED. ALL OF THE USECURED [sic] CLAIMS IN THIS CASE HAVE BEEN SPECIFICALLY DISPUTED DUE TO THE FACT THAT THE CLAIMS WERE THE DIRECT RESULT OF THE VIOLATIONS OUTLINED HEREIN AND ARE NOT LEGALLY THE DEBT OF THE DEBTOR, STAN J. CATERBONE. IN ADDITION[,] DUE**

**TO THE COMPUTER HACKING TO THE DEBTOR, STAN J. CATERBONE, MOST IF NOT ALL FINANCIAL ACCOUNTS WERE AND ARE SUBJECT TO ERRORS AND/OR FALSE LEDGER BALANCES.**

*Id.*

On the eighth page of Caterbone's submission, he asserts that he had filed for Chapter 11 bankruptcy because he was protecting the interest of his creditors and not to abuse the process. *Id.* at ECF p. 8. He also appears to be challenging any need to first obtain credit counseling insofar as he goes on to claim that he "has the expertise and experience far exceeding any Credit Counselor that would be administering the Credit Counseling Certification." *Id.* He then concludes this page by requesting that the court use its discretionary power and follow *DiPinto* to reinstate his bankruptcy petition for the sake of his creditors. *Id.*

On the ninth and tenth pages of his submission, Caterbone includes a purported table of authorities. *Id.* at ECF pp. 9–10. Those "authorities" include (1) *Hanrahan v. Haas*, 600 F.2d 600 (7th Cir. 1979), a case involving a civil rights action for damages brought by members (and representatives of two deceased members) of the Black Panthers; (2) a reference to "Handbook: Counter Intelligence, A Documentary Look at Americas [sic] Secret Police, Volume One"; (3) A letter from Caterbone dated November 28, 2016 to then-FBI Director James Comey relating to "COINTELPRO program with harassment used to obstruct justice in (Stan J. Caterbone's) civil and criminal court proceedings"; (4) *Bakarfit Life Liberty and Pursuit of Happiness for the Bakhary, Asghar, Khwaja and Richardson Family Irrevocable Trust v. New Century Financial*

7

*Corp.*;[4] (5) *Lundahl v. Eaves*;[5] (6) *Caterbone v. Lancaster County Prison*, No. 07-4474 (3d Cir.);[6] (7) *Poulis v. State Farm Fire and Casualty Co.*, 747 F.2d 863 (3d Cir. 1984); (8) "FINDLAW – Police Misconduct and Civil Rights"; (9) *Ward v. Arm & Hammer, et al.*;[7] and (10) "Miscellaneous case law from the law library of Stan J. Caterbone re in forma pauperis and pro se; civil rights; Civil Rights Act of 18 U.S.C.A.; civil conspiracy and RICO; anti-trust; the Federal False Claims Act." *Id.* (emphasis and most capitalization omitted).

The final pertinent portion of Caterbone's submission is his "Stan J. Caterbone/Advanced Media Group Biography." *Id.* at ECF pp. 11–15. This appears to contain descriptions of certain aspects of Caterbone's life from 1984 through 2016, including his role as a "federal whistleblower for the case of local defense contractor International Signal and Control, or ISC." *Id.*

As illustrated by this court's thorough description of Caterbone's submission, despite the court's specificity in describing for him the reasons for possible dismissal of this action in the order to show cause, he submitted 16 pages of information which are irrelevant to the issues raised in the order. Not once does Caterbone mention the timeliness of his appeal or how this court has jurisdiction over this action. Further, his purported "authorities" have absolutely no applicability to this case. As it appears that Caterbone has failed to timely file his appeal from Judge Mayer's

---

[4] Caterbone fails to include a citation for this case. It nonetheless appears that this action was filed in the United States District Court for the District of Delaware. *See Bakarfit Life Liberty and Pursuit of Happiness for the Bakhary, Asghar, Khwaja and Richardson Family Irrevocable Trust v. New Century Financial Corp.*, Civ. A. No. 09-59 (RBK), 2009 WL 483852 (D. Del. Feb. 23, 2009). As with all of Caterbone's purported "authorities," it is unclear how this District of Delaware case (if it is the case to which Caterbone is referring) is remotely relevant to the instant action.

[5] Caterbone fails to include a citation for this case, for which he also appears to have incorrectly identified the appellant as "HOLLILUNDAHL" instead of "Holli Lundahl." *See* Show Cause Br. at ECF p. 9. Nevertheless, it appears that he is referring to *In re Lundahl*, 109 F. App'x 384 (10th Cir. 2004), a case involving an appeal from a decision of the United States Bankruptcy Appellate Panel of the Tenth Circuit which had dismissed a bankruptcy appeal for the appellant's failure to prosecute. *See* 109 F. App'x at 385.

[6] Yet again, Caterbone fails to include a proper citation to this case. It appears that he is referring to *Caterbone v. Lancaster County Prison*, 293 F. App'x 867 (3d Cir. 2008), a case where the Third Circuit determined that, *inter alia*, the district court erred in dismissing Caterbone's complaints without first considering the factors enunciated in *Poulis v. State Farm Fire and Casualty Co.*, 747 F.2d 863 (3d Cir. 1984). *See* 293 F. App'x at 870–71.

[7] Caterbone again does not include a citation to a case he references, but it appears that he is referring here to *Ward v. Arm & Hammer*, 341 F. Supp. 2d 499 (D.N.J. 2004).

February 17, 2021 order, this court lacks subject-matter jurisdiction over this appeal and must dismiss the action for the reasons set forth here and as otherwise set forth in the order to show cause.[8]

### III.     CONCLUSION

As explained above, Caterbone has failed to show cause why the court should not dismiss this appeal from Judge Mayer's dismissal order entered on February 17, 2021. In this regard, his response utterly fails to address any of the court's concerns in the order to show cause. As it appears that he failed to timely file his appeal from the February 17, 2021 order, this court lacks jurisdiction over this appeal. Accordingly, the court will dismiss this action for lack of jurisdiction.

---

[8] As indicated earlier in this opinion, the court's order to show cause also required Caterbone to explain why the court should not dismiss the action for his failure to comply with Federal Rule of Bankruptcy Procedure 8009. As explained in the order to show cause, Caterbone failed to comply with the Bankruptcy Rules by designating the record on appeal in accordance with Rule 8009. This Rule requires bankruptcy appellants to "file with the bankruptcy clerk and serve on the appellate court a designation of the items to be included in the record on appeal and a statement of the issues to be presented." Fed. R. Bankr. P. 8009(a)(1)(A). Pursuant to this Rule, Caterbone should have filed and served this designation and statement within 14 days after filing his notice of appeal. *See* Fed. R. Bankr. P. 8009(a)(1)(B)(i) ("The appellant must file and serve this designation and statement within 14 days after . . . the appellant's notice of appeal as of right becomes effective under Rule 8002[.]"). Although Caterbone included a list of purported "issues on appeal" with his notice of appeal, he never designated the record on appeal and well more than 14 days has passed since he filed the notice of appeal.
    Along with his failure to designate the record on appeal, Caterbone also failed to comply with Rule 8009 relating to the February 16, 2021 hearing before Judge Mayer. Judge Mayer appears to have held this hearing telephonically. *See* Docket, *In re Caterbone*, Bankr. No. 21-10265-pmm (Bankr. E.D. Pa.), Doc. No. 24. Presuming that this hearing occurred as noted on the docket, no transcript was requested or prepared from the hearing and Caterbone was obliged to either order this transcript or file a certificate with the bankruptcy clerk stating that he was not ordering a transcript of the hearing. *See* Fed. R. Bankr. P. 8009(b)(1) ("(1) **Appellant's duty to order[.]** Within the time period prescribed by subdivision (a)(1), the appellant must: (A) order in writing from the reporter, as defined in Rule 8010(a)(1), a transcript of such parts of the proceedings not already on file as the appellant considers necessary for the appeal, and file a copy of the order with the bankruptcy clerk; or (B) file with the bankruptcy clerk a certificate stating that the appellant is not ordering a transcript.").
    Concerning both the issue with Caterbone's failure to file a designation of the record on appeal and order a transcript (or file a certificate stating he was not ordering a transcript), "[a]n appellant's failure to take any step other than the timely filing of a notice of appeal does not affect the validity of the appeal, but is ground only for the district court . . . to act as it considers appropriate, including dismissing the appeal." Fed. R. Bankr. P. 8003(a)(2). Here, as with his response to the court's inquiry about the timeliness of his appeal, Caterbone has not addressed his failure to comply with Rule 8009 in his response to the order to show cause and the court would be inclined to also dismiss this action for these failures even if the court had jurisdiction.

The court will enter a separate order.

BY THE COURT:

/s/ *Edward G. Smith*
EDWARD G. SMITH, J.